**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| MORESE DELOATCH | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 10-205 (RMU) |
| | : | | |
| v. | : | Re Document No: | 28 |
| | : | | |
| HARRIS TEETER, INC., | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff claims that his employer, Harris Teeter, Inc. ("the defendant"), violated various federal statutes relating to employee compensation, workplace discrimination and medical leave. *See generally* Am. Compl. Because the defendant demonstrates that the plaintiff does not make a showing sufficient to establish the existence of an element essential to each of his claims, the court grants the defendant's motion.

## II. FACTUAL & PROCEDURAL BACKGROUND

In October 2005 the plaintiff, an African American, began working as an associate in the meat department of one of the defendant's retail grocery stores. Am. Compl. ¶¶ 4-5. From 2005 until September 2008, the plaintiff worked for the defendant at Store # 83 located in Virginia. *See* Def.'s Mot. for. Summ. J. ("Def.'s Mot."), Ex. B (Pl.'s Dep.) at 50-55. After a brief stint at another store, the plaintiff transitioned to Store #282, located in the District of Columbia, where

he remained working from September 2008 until his separation from the defendant in June 2009. *See id.*

The defendant asserts that, like all of its employees, the plaintiff received an "associate guidebook," detailing the defendant's policies and procedures regarding hourly compensation, anti-discrimination and employee leave. *See id.* at 55. According to the plaintiff, however, the defendant largely failed to uphold its own policies. *See generally* Am. Compl.

The plaintiff filed this action in February 2010, asserting that the defendant violated various federal statutes relating to employee compensation, workplace discrimination and medical leave. *See generally id.* The factual allegations underlying these claims are discussed in more detail in the court's analysis below.

In December 2010, the defendant moved for summary judgment. *See generally* Def.'s Mot. With the defendant's motion now ripe for review, the court turns to the parties' arguments and the applicable legal standards.

## III. ANALYSIS

### A. Legal Standard for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution

could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

### B.  The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Failure to Compensate Claims

The plaintiff alleges that the defendant failed to pay him for overtime and off-the-clock

work, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207.[1]  Am. Compl. ¶¶

12-24.  More specifically, the plaintiff asserts that the defendant willfully violated the FLSA by

not compensating him for the time spent: (1) completing product transfers[2] between stores, (2)

working certain shifts that he picked up in addition to his normal work schedule; (3) attending

certain training sessions, (4) working during periods which management erroneously punched

him out as being on a lunch break (referred to by the plaintiff as "improper management punch

outs") and (5) working during meal periods that lasted less than 30 minutes ("short lunches").

*See* Pl.'s Opp'n at 2.

The defendant argues that many of the plaintiff's claims are time-barred under the

FLSA's two-year statute of limitations period.  Def.'s Mot. at 33.  The defendant further

contends that the plaintiff does not adequately demonstrate "how much [off-the-clock] work he

performed, when he performed it, or that he was not paid for it" and has not submitted any

evidence that the defendant was aware of the plaintiff's uncompensated work.  *Id*. at 33.  Finally,

---

[1]  In his complaint, the plaintiff also claims that the defendant violated the D.C. Wage Payment and Collection Law, D.C. Code Ann. §§ 32-1301 *et seq.*, by failing to adequately compensate him for working certain "split shifts" and "short shifts" (shifts shorter than four hours).  Am. Compl. ¶ 23. The defendant argues that this statute does not apply to the plaintiff because it never scheduled the plaintiff to work any "split shifts" or "short shifts."  Def.'s Mot. at 36-37.  The plaintiff provides no argument in response, instead simply reiterating that the "[d]efendant violated the D.C. Wage Act by failing to pay [the plaintiff] the extra amounts when he worked a shift of less than [four] hours and when he worked a split shift."  Pl.'s Opp'n at 7.  Because the plaintiff has not provided any factual or legal analysis in response to the defendant's argument, the court grants as conceded the defendant's motion for summary judgment with respect to the plaintiff's D.C. Wage Payment and Collection Law claims.  *See e.g.*, *Ivanov v. Sunset Pools Mgmt.*, 567 F. Supp. 2d 189, 191 (D.D.C. 2008 (treating the defendant's motion for summary judgment as conceded because the plaintiff failed to address the defendant's claims and granting summary judgment to the defendants as to those claims (citing LCvR 7(m)).

[2]  A "product transfer" or "product pick up" involves transferring product from one Harris Teeter location to another because of low inventory.  *See* Pl.'s Statement of Material Facts in Dispute ("Pl.'s Statement") at 11.  According to the plaintiff, this usually required him to drive from his home store to another location while off the clock.  *Id.*

the defendant alternatively maintains that the plaintiff's allegations of uncompensated work occurred "perhaps a handful of times" and therefore should be treated as *de minimis*. *Id*. at 34.

In response, the plaintiff asserts that he has sufficiently raised a "reasonable inference" as to the amount and extent of the work he performed. *See* Pl.'s Opp'n at 11. Further, the plaintiff asserts that his claims are not *de minimis* because they cannot be categorized as being "insubstantial or insignificant periods of time." *See id.* at 9.

As a threshold matter, the court determines that many of the plaintiff's claims are barred by the FLSA's two-year statute of limitations. An action to collect unpaid overtime is "forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129 (D.C. Cir. 2011) (quoting 29 U.S.C. § 255(a) (2009)). A FLSA violation is willful if the employer knows, or shows reckless disregard, as to whether its conduct is prohibited by the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). Mere negligence on behalf of an employer is insufficient to trigger the three-year limitations period under the FLSA. *Id.*

The plaintiff has provided no evidence that the defendant acted recklessly or willfully with regard to its alleged failure to pay him for overtime work. *See generally* Pl.'s Opp'n. Indeed, the defendant's time and attendance policies explicitly outlined procedures to ensure compliance with the FLSA, and the record reflects that the defendant sought to monitor its compliance through routine audits of employee time records. *See* Def.'s Mot., Ex. A (Associates Guidebook) at 13; Def.'s Mot., Ex. 5 (Vines's Decl.) at ¶ 9. Accordingly, because the plaintiff has failed to provide evidence of either a willful or reckless violation of the FLSA, any alleged violations that occurred before February 5, 2008, two years prior to the date the plaintiff filed his

5

Complaint, are barred under FLSA's two year statute of limitations.  *See* 29 U.S.C. § 255(a); *see also Phuong v. Nat'l Acad. Of Scis.*, 901 F. Supp. 12, 15 (D.D.C. 1995) (granting summary judgment on the issue of statute of limitations because the employee's conclusory and unsupported allegations were insufficient to show that the defendant had willfully violated the FLSA).

Turning to the plaintiff's allegations of uncompensated work arising after February 5, 2008, the FLSA requires that an employee must be paid overtime wages for hours worked in excess of forty hours per week.  29 U.S.C. § 207(a)(1); *see also id.* § 216(b) (providing that affected employees may recover for violations of the FLSA's overtime provision).  An employee seeking unpaid overtime compensation under the FLSA has the "burden of proving that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-88 (1946).  An employee may discharge this burden if he "proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  *Mt. Clemens Pottery Co*., 328 U.S. at 687; *see also Hunter v. Sprint Corp*., 453 F. Supp. 2d 44, 52-53 (D.D.C. 2006).  If the employee provides such evidence, "[t]he burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id*. at 687-88.

Notably, any unpaid overtime must not be *de minimis,* meaning that the employee must be "required to give up a substantial measure of his time and effort" for compensable working time to be involved.  *See Mt. Clemens Pottery Co.,* 328 U.S. at 692 (determining that the *de minimis* doctrine permits employers to disregard for purposes of the FLSA otherwise

compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours").  Courts have considered three factors in determining whether working time is *de minimis:* (1) the practical administrative difficulty of recording additional time; (2) the size of the claim in the aggregate; and (3) whether such work was performed on a regular basis.  *Singh v. City of New York*, 524 F.3d 361, 370-71 (2d Cir. 2008); *De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374-75 (3d Cir. 2007); *Lindow v. United States*, 738 F.2d 1057, 1063 (9th Cir. 1984).

Here, the plaintiff's only evidence of uncompensated work is his own deposition testimony and his answers to the defendant's interrogatories.  *See generally* Pl.'s Opp'n.  With respect to his claims corresponding to short meal periods, improper management punch outs and unpaid training sessions, the plaintiff proffers a log of hours which is not based on his own personal knowledge, *see* Pl.'s Opp'n, Ex. 14 (Pl.'s Answers to Interrog.) at 5-9, but rather, was compiled based on his attorney's estimates,[3] *see* Def.'s Mot., Ex. B (Pl.'s Dep.) at 199 (the plaintiff's testimony that he did not know if the information contained in the list of short meal periods and improper management punch outs was correct because his attorney "did the research on it"); *id.* at 234 (the plaintiff's testimony acknowledging that he did not have any basis or evidence to support his allegation of unpaid training time because his attorney had estimated the hours).

---

[3]    The plaintiff does appear to recall one instance during which he was requested by his manager to work over his lunch period in order to assist with a refrigeration problem. *See* Pl.'s Opp'n at 11; *see also id.*, Ex. 1 (Pl.'s Dep.) at 158-59.  This lone event, however, would at most raise a claim for a short amount of uncompensated time and would be for work that was not performed on a regular basis.  As such, the court determines that the claim is *de minimis*.  *See Singh v. City of New York*, 524 F.3d 361, 370-71 (2d Cir. 2008) (noting that when work off the clock is not performed on a regular basis such time may be considered *de minimis*).

It is well established that evidence not based on personal knowledge is insufficient to defeat a motion for summary judgment. FED. R. CIV. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."); *Londrigan v. Fed. Bureau of Investigation*, 670 F.2d 1164, 1174 (D.C. Cir. 1981) (noting that the "requirement of personal knowledge by the affiant is unequivocal, and cannot be circumvented" and that "[a]n affidavit based merely on information and belief is unacceptable"). Moreover, "[t]he mere arguments of counsel . . . are not evidence" that may be used to defeat a motion for summary judgment. *Barnette v. Ridge*, 2004 WL 3257071, at *6 n.6 (D.D.C. 2004); *see also Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1372 (3d Cir. 1996) ("[L]egal memoranda and oral argument are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.") (internal quotation marks and citation omitted). Accordingly, because the plaintiff provides no reliable evidence of uncompensated time for short meals, improper management punch outs and "unpaid training," no reasonable juror could draw a "just and reasonable inference" regarding "the amount and extent" that the plaintiff had allegedly performed without payment. *Mt. Clemens Pottery Co.*, 328 U.S. at 687.

The plaintiff's allegations of uncompensated product transfers and pick up shifts, on the other hand, appear to be based on his personal knowledge communicated through his own deposition testimony.[4] Pl.'s Statement at 11. The plaintiff's assertions are, however, largely

---

[4]        Notably, the plaintiff also directs the court to "an affidavit asserting that he was requested by management to travel to other stores on his way to work to pick up product," *see* Pl.'s Opp'n at 10. Assuming that the plaintiff is referring to his own sworn affidavit, Pl.'s Opp'n, Ex. 12, the court is unable to find any reference to the unpaid product pickups within this document, *see generally id.*

conclusory and unsubstantiated by factual detail. *See* Pl.'s Opp'n, Ex. 1 (Pl.'s Dep.) at 246-47

(the plaintiff's testimony that he performed approximately twelve product transfers that he

estimated took between forty-five minutes to an hour to complete, yet providing dates for only

two relevant product transfers[5]); *see id*. at 141-44 (the plaintiff's testimony that he completed

five unpaid "pick up shifts," providing only minimal details regarding the days in question and

without any substantial discussion of the work he performed). Such evidence is hardly sufficient

grounds upon which a reasonable juror could infer the amount and extent of uncompensated

work allegedly performed by the plaintiff. *Lee v. Vance Exec. Prot. Inc*., 7 F. App'x. 160, 166

(4th Cir. 2001) (affirming summary judgment for the plaintiff's FLSA claims because of

"insufficient evidence to estimate the amount and extent of [unrecorded] hours" that he worked,

notwithstanding his general testimony that he was asked to run errands for clients after his shifts

had been scheduled to end).

Even assuming, however, that the plaintiff's evidence is sufficient, the plaintiff has failed

to rebut the defendant's evidence negating the reasonableness of the plaintiff's allegations. *See*

Def.'s Mot. at 34-35. With respect to the plaintiff's claims of five unpaid pickup shifts, the

defendant provides the plaintiff's time cards from the days in question, revealing that he was

paid for at least one of the alleged days and indicating that the plaintiff did not punch his time

card at all on the remaining four days. *Id*., Ex. B at 19. As for the plaintiff's alleged

uncompensated time conducting product transfers, the defendant points out that there are no

---

[5]       Although the plaintiff claims he conducted a product transfer on a third date, February 12, 2006, *see* Def.'s Mot. Ex. B (Pl.'s Dep.) at 228, the court has already noted that claims arising before February 5, 2008 are barred under FLSA's two year statute of limitations. *See supra* Part III.B.

product transfer slips in the defendant's records for the dates the plaintiff reports to have conducted unpaid product transfers.[6]  *See* Def.'s Mot., Ex. J.

The plaintiff fails to dispute any of the defendant's evidence, relying solely on his own conclusory statements which are void of any factual detail.  *See generally* Pl.'s Opp'n.  Indeed, the plaintiff makes no mention of the alleged unpaid pickup shifts in his opposition to the defendant's motion for summary judgment.  *See generally* Pl.'s Opp'n.  Because the plaintiff does not address his allegations of unpaid product transfers and pick up shifts in a meaningful manner, the court determines that defendant has successfully negated the reasonableness of the plaintiff's claims.  *See Cement Kiln Recycling Coal. v. Envlt. Prot. Agency*, 255 F.3d 855, 869 (D.C. Cir. 2001) ("A litigant does not properly raise an issue by addressing it in a cursory fashion with only bare bone arguments"); *see also Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988) ("[A] district court judge should not be obligated to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not be a genuine issue of material disputed fact.").

---

[6]     The court also notes that pursuant to the defendant's associate guidebook, associates are strictly prohibited from working off the clock and must keep accurate records of the time they worked by recording the beginning and ending time of each work period, including the beginning and ending time of any meal period, split shift (a shift with more than one hour break scheduled within it, *see* D.C. Mun. Regs. Tit. 7 § 999.2 (defining split shift)), or an early departure from work for personal reasons, *see* Def.'s Mot., Ex. A (Associates Guidebook) at 13-14.  Product transfers, moreover, are usually performed by salaried employees, but if an hourly employee is asked to perform a product transfer before or after his shift, the general policy is to have the employee "call-in" to his home store to ensure the defendant accurately accounts for the employee's time.  *See* Def.'s Mot., Ex. E, Dep. of Lisa Adams, store manager of Store # 282, ("Adams's Dep.") at 15-16.

Accordingly, because the plaintiff has neither provided any evidence from which a reasonable juror could infer the amount and extent of uncompensated work performed, nor adequately addressed the defendant's evidence negating the reasonableness of his claims of unpaid work off the clock, the court grants the defendant's motion for summary judgment on the plaintiff's FLSA claims.

## C. The Plaintiff's Discrimination Claims

### 1. The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Disparate Treatment Claim

The plaintiff alleges that the defendant discriminated against him on the basis of his race, violating 42 U.S.C. § 1981 and the District of Columbia Human Rights Act ("DCHRA").[7] *See* Am. Compl. ¶¶ 28, 34. In making these allegations, the plaintiff notes that during the course of his employment, he participated in the defendant's "BBT" program,[8] an on-the-job training curriculum designed to train associates to become either department managers or assistant market managers, depending on which program they entered. *See* Pl.'s Statement at 7; Vines's Dep. at 58-61. The plaintiff alleges that his BBT training program "was not equivalent to the training provided to white and Asian employees." Pl.'s Statement at 7; *see also* Pl's Opp'n, Ex.

---

[7] The court notes that the plaintiff alleges in his complaint that the defendant retaliated against him for "complaining about racial discrimination." Am. Compl. ¶¶ 29-34. The plaintiff, however, makes no mention of this claim in his opposition to the defendant's motion for summary judgment. *See generally* Pl.'s Opp'n. Accordingly, to the extent that the plaintiff raised a retaliation claim, the court treats it as conceded and grants summary judgment to the defendant with respect to the claim. *Hopkins v. Women's Div., Gen. Bd. of Global Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003) ("It is well understood in this Circuit that when a plaintiff files an opposition to a dispositive motion and addresses only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded." (citing *Fed. Deposit Ins. Corp. v. Bender*, 127 F.3d 58, 67-68 (D.C. Cir. 1997))).

[8] The plaintiff entered the BBT program at Store #83 to become an assistant market manager, but discontinued his participation in March 2007. Def.'s Mot., Ex. B (Pl.'s Dep.) at 57, 61-62, 70. After moving to Store #282, the plaintiff re-enlisted in the BBT program, where he trained until his separation from the defendant in June 2009. *See id.* at Ex. 7.

1 (Pl.'s Dep.) at 66-67.  More specifically, the plaintiff claims that although other employees were permitted to use their notes during a final exam, he was not allowed to do so.  Pl's Opp'n, Ex. 1 (Pl.'s Dep.) at 66-67.  Moreover, he alleges that he was not permitted "to attend the weekly managers meeting at the store while others in the BBT program attended these meetings," and received less hours of training than non-African American employees.  *Id.*  Based on these differences in treatment while in the BBT program, the plaintiff alleges that the defendant racially discriminated against him.[9]  Pl.'s Statement at 7; *see also* Pl.'s Opp'n, Ex. 1 (Pl.'s Dep.) at 61-67; Pl.'s Opp'n, Ex. 12 (Pl.'s Aff.) at ¶ 5.

The defendant asserts that "no BBT participants [were] allowed to use notes during the final walkthrough."  Def.'s Mot. at 22; Vines's Dep. at 62-63.  Further, the defendant argues that only employees training as "department managers," were scheduled for forty-four hours of training per week, and that all other employees, including "assistant managers" like the plaintiff, were scheduled for forty hours of weekly training.  *Id.*; Adams's Dep. at 266.  Similarly, the defendant submits that its weekly manager meetings are "only for department managers and the assistant department manager may attend only in the department manager's absence."  Def.'s

---

[9]     The plaintiff also alleges that there is "direct evidence of discrimination" to support his race discrimination claim because a manager once addressed him using the term "nigger."  *See* Pl.'s Opp'n at 5.  Direct evidence of discrimination is "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision."  *Thomas v. Nat'l Football League Players Ass'n*, 131 F.3d 198, 204 (D.C. Cir. 1997).  There is no indication, however, that the manager who allegedly used the term "nigger" was involved in any fashion with the allegedly discriminatory behavior concerning the BBT program or even the plaintiff's termination.  *See generally* Am. Compl.; Pl.'s Opp'n.  Thus, the court determines that the plaintiff has not advanced direct evidence of discrimination to support any allegations of disparate treatment in the BBT program or with respect to his termination.  *See Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1079-80 (D.C. Cir. 1999) (affirming summary judgment for the defendant because individual who remarked that the plaintiff was too old for the job did not participate in the termination decision).

Mot. at 22; *See* Vines's Decl. at ¶ 33. The plaintiff provides no argument in response to the defendant's assertions. *See* Pl.'s Opp'n at 5; Pl.'s Statement at 2, 7.

Section 1981 claims and DCHRA claims are scrutinized under the same legal framework used by courts in analyzing claims brought under Title VII of the Civil Rights Act of 1964, 41 U.S.C. §§ 2000e *et seq. See Berger v. Iron Workers Reinforced Rodmen Local 201*, 843 F.2d 1395, 1413 n.7 (D.C. Cir. 1988) (noting that "the standards and order of proof in [§] 1981 cases have been held to be identical to those governing Title VII disparate treatment cases" (citing *Carter v. Duncan-Huggins, Ltd.*, 727 F.2d 1225 (D.C. Cir. 1984))); *Atl. Richfield Co. v. D.C. Comm'n on Human Rights*, 515 A.2d 1095, 1099 (D.C. 1986) (noting that "[i]n an employment discrimination case where disparate treatment is alleged, this court has adopted the . . . allocation of the burdens of proof under Title VII of the Civil Rights Act of 1964"). Under the Title VII framework, when a defendant presents a legitimate, non-discriminatory reason for its actions, the district court need resolve only one question to adjudicate a motion for summary judgment: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" *Brady v. Office of the Sergeant at Arms, U.S. House of Representatives*, 520 F.3d 490, 494 (D.C. Cir. 2008). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1291 (D.C. Cir. 1998)). The plaintiff need not present evidence in each of these categories to avoid summary judgment. *Aka*,

13

156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case. *Id.* at 1291.

Here, the defendant has provided legitimate nondiscriminatory reasons for its actions. The defendant proffers testimony that its company practice is to not allow any trainees to use notes during the final exam, *see* Def.'s Mot., Vines's Dep. at 62-63, and that only department managers, and not assistant managers such as the plaintiff, were allowed to participate in management meetings, *id.* at ¶ 33. Additionally, the defendant points out that only those individuals training to become department managers received forty-four hours of training per week. *See* Adams's Dep. at 26.

The plaintiff, in turn, has not demonstrated any evidence of the defendant's discriminatory animus in making these employment decisions. *See generally* Pl.'s Opp'n. Indeed, the plaintiff fails to address any of the plaintiff's legitimate, non-discriminatory reasons, or otherwise put forth an argument that the defendant's proffered reasons were false or pretextual. *See generally* Pl.'s Opp'n; *see also Czekalski v. Peters*, 475 F.3d 360, 366 (D.C. Cir. 2007) (noting that "one way for a plaintiff to show that an adverse employment decision was made for a discriminatory reason is to show that the nondiscriminatory explanation the defendant proffered for its decision was false" (citations omitted)).

Because the plaintiff fails to address the defendant's legitimate non-discriminatory reasons for its actions, the court determines that the plaintiff has not provided evidence which would permit a reasonable juror to conclude the defendant's actions were pretextual. *See Hastie v. Henderson*, 121 F. Supp. 2d 72, 81 (D.D.C. 2000) (determining that no genuine issue of material fact existed because the plaintiff had provided no evidence "other than her own self-serving and conclusory statements . . . that would permit [the court] to conclude that defendant's

14

reason . . . [were] pretextual"); *Saunders v. DiMario*, 1998 WL 525798, at *4 (D.D.C. Aug. 14, 1998) ("Plaintiff has otherwise offered the type of self-serving allegations that are simply insufficient to establish pretext."). Accordingly, the defendant's motion is granted as to the plaintiff's disparate treatment claim. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1200 (D.C. Cir. 2008) (affirming grant of summary judgment to the defendant because the plaintiff failed to offer any evidence to rebut the legitimate, nondiscriminatory reasons offered by the employer).

### 2. The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's Hostile Work Environment Claim

The plaintiff further alleges that he encountered a racially hostile work environment at both of the defendant's stores where he worked. Am. Compl. ¶ 26. Specifically, he alleges that his manager used the phrase "Nigger, please" when commenting on the plaintiff's lack of effort while working in the meat department. Pl.'s Opp'n, Ex. 2 at 43. The plaintiff also claims that he overheard another manager use the same derogatory term in addressing his co-worker. *Id.*, Ex. 1 at 270. As a general matter, the plaintiff submits that other employees had witnessed the use of racially offensive language while working for the defendant on a variety of occasions. Pl.'s Aff. at ¶ 3.

The defendant argues that even taking the plaintiff's allegations of racially offensive language as true, this evidence does not constitute conduct "so extreme to amount to a change in the terms and conditions of [the plaintiff's] employment" and therefore does not rise to the level of a hostile work environment. Def.'s Mot. at 23. Indeed, the defendant maintains, the plaintiff only "heard the N-word twice during his employment" and never once complained about these

instances to Associate Relations.[10]  *Id.*  According to the defendant, it "exercised reasonable care to prevent and correct any harassing behavior that was brought to its attention."  Def.'s Mot. at 24.

In response, the plaintiff argues that the defendant created a hostile environment by allowing the use of racially offensive language and discriminating against the plaintiff in the BBT program.  Pl.'s Opp'n at 6.  He contends that the evidence he has proffered concerning those events is sufficient for his claim to survive summary judgment.  *Id.*

Title VII prohibits an employer from discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment because of race, color, religion, sex, or national origin.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  Toward that end, an employer may not create or condone a hostile or abusive work environment that is discriminatory.  *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 64 (1986).  Such an environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Singletary v. District of Columbia*, 351 F.3d 519, 526 (D.C. Cir 2003) (quoting *Meritor*, 477 U.S. at 65, 67).  On the other hand, "[c]onduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment – an environment that a reasonable person would find hostile or abusive – is beyond Title VII's purview."  *Harris*, 510 U.S. at 21.  Thus, to determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the

---

[10]     The defendant notes that company policy directs any associate with concerns about "any type of discrimination in the workplace . . . to bring these issues to the attention of their immediate supervisor, Manager, Associate Relations Specialists, or the Director of Associate Relations at the Corporate Office."  Def.'s Mot., Ex. A (Associate Guidebook) at 7.

discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *Id.* at 23; *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998). In considering the totality of the circumstances, however, the court is mindful that:

> [e]veryone can be characterized by sex, race, ethnicity, or (real or perceived) disability, and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude form consideration personnel decisions that lack a linkage of correlation to the claim ground of discrimination. Otherwise the federal courts will become a court of personnel appeals.

*Bryant v. Brownlee*, 265 F. Supp. 2d 52, 63 (D.D.C. 2003) (quoting *Alfano v. Costello*, 294 F.3d 365, 377 (2d Cir. 2002)).

An examination of the plaintiff's evidence shows that the defendant's conduct, although inappropriate at times, does not rise to the level of a hostile work environment. As the court has already discussed, the plaintiff has not introduced any evidence to support that the defendant acted in a discriminatory fashion when conducting the BBT program. *See supra* at 17-18. Moreover, "alleged acts of disparate treatment cannot be transformed, without more, into a hostile work environment claim." *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 164 (D.D.C. 2007) *aff'd*, 309 F. App'x. 422 (D.C. Cir. 2009); *Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims . . . are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult.").

The only other possible evidence of discrimination offered by the plaintiff is his testimony that, in the time spent working for the defendant, his manager addressed him as "nigger" once and that he overheard another manager refer to his co-worker using the same term on a separate occasion. *See* Pl.'s Opp'n at 5; *see also* Def.'s Mot., Ex. B (Pl.'s Dep.) at 237, 269.

The plaintiff apparently did not report either incident to management. Def.'s Mot., Ex. B (Pl.'s Dep.) at 237; *see* Pl.'s Opp'n, Ex. 12 at 269.

It is well established that the "mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee would not affect the conditions of employment to [a] sufficiently significant degree to violate Title VII." *Meritor,* 477 U.S. at 67 (citations omitted); *see also Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship*, 518 F. Supp. 2d 179, 184 (D.D.C. 2007) (citing *Meritor*, 477 U.S. at 67)). Indeed, courts have held that no hostile work environment exists in situations where the alleged instances of racially hostile behavior were far greater than what the plaintiff experienced in this case. *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 518 (6th Cir. 2009) (granting summary judgment on hostile work environment claim to employer although the plaintiff "often overheard several employees use the word 'nigger' at work"); *Woodland v. Joseph T. Ryerson & Son, Inc.*, 302 F.3d 839, 844 (8th Cir. 2002) (concluding that no severe or pervasive hostile work environment existed although the plaintiff had been exposed to racial poems and drawings of KKK, swastika, and a hooded figure on the bathroom wall); *Bryant v. Brownlee*, 265 F. Supp. 2d 52, 64 (D.D.C. 2003) (determining that no hostile work environment existed even though a coworker referred to the plaintiff as "nigger" and had stated that white men were first and black women were "at the bottom"); *George v. Leavitt*, 407 F.3d 405, 416-17 (D.D.C. 2005) (holding that statements by three employees over a six-month period telling plaintiff to "go back where she came from," separate acts of yelling and hostility and allegations that plaintiff was singled out for undesirable work assignments were insufficient to demonstrate a hostile work environment); *Wright v. Eastman Kodak Co.*, 550 F. Supp. 2d 371, 379 (W.D.N.Y. 2008), *aff'd*, 328 F. App'x. 738 (2d Cir. 2009) (determining that alleged incidents – including a colleague's attempt to place flashlight near or between an

18

African-American employee's buttocks, a co-worker's reference to an African-American employee as "boy," and a co-worker's use of racial slur – did not create a hostile work environment).

In light of this case law, the plaintiff's allegations – that his manager referred to him as a "nigger" in one instance and that he overheard another manager call his co-worker the same racial epithet on another occasion – are not enough to rise to the level of severity and pervasiveness required to maintain a hostile work environment claim. Nor does the plaintiff's claim that other employees told him that their supervisors would also call them "nigger," alter this determination. *Kilby-Robb v. Spellings*, 522 F. Supp. 2d 148, 166-67 (D.D.C. 2007), *aff'd*, 309 F. App'x. 422 (D.C. Cir. 2009) (citations omitted) (explaining that "the impact of second-hand harassment is obviously not as great as the impact of harassment directed at the plaintiff"). Accordingly, because no reasonable juror could determine that the defendant's conduct was so severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive working environment, the court grants the defendant's motion for summary judgment on the plaintiff's hostile work environment claim.

### D. The Plaintiff's Family Medical Leave Act ("FMLA") Claims

The plaintiff alleges that the defendant denied him time off to care for the serious medical conditions of his wife and mother, violating the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq*. Am. Compl. ¶ 43. By way of background, in October 2008, the plaintiff's wife had emergency gallbladder surgery, requiring her to remain in the hospital for three days. Def.'s Mot., Ex. B (Pl.'s Dep.) at Ex. 1 at 209-13. After his wife's surgery, the plaintiff reports that he requested three weeks of leave, explaining to his manager that his wife's surgery had been more complicated than originally anticipated and that she would need help

around the house.  *Id.* at 211.  According to the plaintiff, the defendant, however, refused to grant this leave.  *Id.* at 209-13.

In April 2009, the plaintiff's mother was diagnosed with pancreatic cancer.  Pl.'s Dep. Ex. 1 at 213.  According to the plaintiff, he again requested time off to help his mother, and was allowed some, but not all, of the days off he requested.  *Id.* at 214-15.  His mother was hospitalized on June 16, 2009, and she passed away the following day.  *Id.* at 99-100.

After his mother's death, the plaintiff alleges that his supervisors told him to "take as much time as [he] need[ed]."  Pl.'s Opp'n, Ex. 2 at 173.  According to the defendant, the plaintiff was granted three days of bereavement leave, but did not return after the three days elapsed.  Vines's Dep. at 72-77.  After unsuccessfully attempting to contact the plaintiff for approximately three weeks, the defendant removed the plaintiff's name from the payroll.  *Id.* at 72-73.  In late July 2009, the plaintiff contacted Associate Relations Manager, Rodney Vines, to inquire whether he could return to his position.  *Id.* at 75.  The plaintiff was advised that he would not be reinstated and would have to reapply for a position, which he elected not to do.  *Id.* at 82-83.

According to the defendant's leave of absence policy, an employee is permitted up to twelve weeks of leave in order to care for a family member's serious health condition.  Def.'s Mot., Ex. A at 17.  The defendant's policy, however, requires that the employee must "provide certification issued by the attending health care provided of the need for leave."  *Id.* at 20.  The certification must include, among other things, "[t]he date the medical condition and treatment began and the probable duration, [t]he time the associate is expected to miss work, . . . [and a] statement from the associate's health care provided that the associate is unable to perform their position."  *Id.*

Two distinct types of claims are recognized under the FMLA: (1) "interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act," and (2) "retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act." *Gaghan v. Guest Servs., Inc.*, 2005 WL 3211591, at *3 (D.D.C. Oct. 26, 2005) (citing *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001)); *see also* 29 U.S.C. § 2615(a)(1)-(2); *Price v. Wash. Hosp. Ctr.*, 321 F. Supp. 2d 38, 46 (D.D.C. 2004); *Roseboro v. Billington*, 606 F. Supp. 2d 104, 107-08 (D.D.C. 2009). The plaintiff pursues his FMLA claims under both theories. Pl.'s Opp'n at 12. The court addresses each in turn.

## 1. The Court Grants the Defendant's Motion for Summary Judgement on the Plaintiff's FMLA Interference Claim

The plaintiff alleges that the defendant violated the FMLA by refusing him time off to care for his wife and mother who both suffered from serious medical conditions.[11] Am. Compl. ¶ 43. The defendant argues that the plaintiff's interference claim fails because he has not demonstrated that either his wife or mother had a serious health condition as defined by the FMLA. Def.'s Reply at 19. More specifically, the defendant contends "there are no facts to show that [the plaintiff's wife] had a serious medical condition during her recovery period because her after-care instructions did not require personal care, but rather advised her to 'remain active.'" *Id.* With respect to the plaintiff's mother, the defendant argues that her cancer "did not meet the required definition of a serious medical condition because her radiation treatment at the hospital did not involve inpatient care." *Id.* The defendant further contends that the plaintiff

---

[11] Additionally, the plaintiff contends that the defendant also denied him time off to attend to his own serious medical conditions. *See* Pl.'s Statement at 9; Pl.'s Opp'n at 13. Because the court has already denied the plaintiff's motion to amend his complaint by adding these allegations, *see* Minute Entry (Nov. 18, 2010), it does not address them here.

failed to provide it with proper notice under the FMLA because he did not communicate a "qualifying reason" at the time that he asked his manager for time off from work, and that he did not follow the defendant's policy requiring medical certification for FMLA leave approval.  *Id.* at 19-20.

The plaintiff responds that his wife's medical condition was a "serious medical condition [because it] requir[ed] three days of hospitalization."  Pl.'s Statement at 5.  Additionally, the plaintiff contends that his mother's pancreatic cancer was by definition a serious medical condition under the FMLA and that the defendant was "largely denied" the days off he requested.  *Id.* at 5-6.  Finally, the plaintiff maintains that he did follow the defendant's policies for requesting leave, which, according to the plaintiff, only required him to raise his request for time off to his immediate supervisor.  *Id.* at 9.

In order to establish an interference claim under FMLA, a plaintiff must prove, *inter alia*, that (1) the plaintiff was entitled to take leave because he or a family member had a "serious health condition," (2) the plaintiff provided the defendant with adequate notice of his or her intention to take leave and (3) the defendant interfered with the plaintiff's right to take leave.  *See* 29 U.S.C. §§ 2611, 2612, 2615.  Upon returning from FMLA leave, a covered employee is entitled to be reinstated to his same position of employment or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  *See* 29 U.S.C. § 2614(a)(1)(A)-(B).  A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves inpatient care . . . or continuing treatment by a health care provider."  29 C.F.R. § 825.113(b) (2009); *see also* 29 U.S.C. § 2611(11)(B).  A health condition involving continuing treatment entails, *inter alia*, "[a] period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or

period of incapacity relating to the same condition." 29 C.F.R. § 825.115(a). It is the plaintiff's burden to establish that the leave of absence was caused by a "serious health condition." *Lightfoot v. District of Columbia*, 2006 WL 54430, at *4 (D.D.C. Jan. 10, 2006) (citing *Bauer v. Varity Dayton-Walther Corp.*, 118 F.3d 1109, 1112 (6th Cir. 1997)).

Here, the plaintiff provides no evidence that his wife required any inpatient care or continuing treatment by a health care provider after her initial surgery.[12] *See generally* Pl.'s Opp'n. Instead, the plaintiff simply states that his wife's medical condition was serious and that she needed his "help during her recovery." Pl.'s Statement at 9. Such conclusory statements, without more, are insufficient to defeat a motion for summary judgment. *See Bond v. Abbott Labs.*, 7 F. Supp. 2d 967, 974 (N.D. Ohio 1998) (determining that whether an illness qualifies as a "serious health condition" for purposes of the FMLA is a legal question that a plaintiff may not avoid simply by alleging it to be so). Accordingly, because the plaintiff has failed to put forth sufficient evidence that his wife's condition required any continuing treatment by a health provider, a reasonable juror could not conclude that she suffered from a serious health condition as defined by the FMLA and summary judgment is appropriate. *See Ahern v. Dep't of Treasury*, 230 F.3d 1373 (Fed. Cir. 1999) (affirming that an employee's gall bladder condition did not constitute a serious health condition because there was no evidence of a period of incapacity of more than three days or continuing treatment under the supervision of a health care provider as required by the regulations).

The plaintiff did, however, advance sufficient evidence to demonstrate that his mother suffered from a serious health condition under the FMLA. The regulations governing the FMLA

---

[12] The plaintiff acknowledges that he was available to care for his wife during her surgery. *See* Pl.'s Opp'n, Ex. 1 at 210. The court therefore limits its analysis to the plaintiff's claim that he was denied leave to care for his wife after her hospital discharge.

state that a serious health condition includes "[a] condition that would likely result in a period of incapacity of more than three consecutive, full calendar days in the absence of medical intervention or treatment, *such as cancer*." 29 C.F.R. § 825.115(e)(2) (emphasis added). The plaintiff provided deposition testimony that his mother was required to undergo radiation treatment for her pancreatic cancer beginning in April 2009, which ostensibly lasted until her passing in June 2009. *See* Pl.'s Statement at 9; Pl's Opp'n, Ex. 1 (Pl.'s Dep.) at 210-13. In light of this testimony, a reasonable juror could conclude that his mother's cancer constituted a serious medical condition.

Under the FMLA, however, the plaintiff must also show that the defendant had sufficient notice as to the "qualifying reason for the needed leave." 29 C.F.R. § 825.208(a)(2). Although an employee need not expressly assert his rights under the FMLA or even mention the FMLA, an employee must provide "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. § 825.303; *see also id*. § 825.302. For instance, an employee should inform the employer if "the condition renders the family member unable to perform daily activities." *Id*. § 825.302(c). Ultimately, the timeliness and adequacy of notice standards depend on the facts of each case. *See id*. § 825.303(b) (stating that the content of adequate notice "[d]epend[s] on the situation").

Although the plaintiff's deposition testimony indicates that he was upset when he told his manager that he "needed some time off to help his mom," Pl.'s Opp'n, Ex. 1 (Pl.'s Dep.) at 214, it does not indicate that he told his employer the reasons for his requested time off, *see id.* at 210-16. In fact, the plaintiff does not indicate whether he even told his manager that his mother was suffering from cancer, that she was under the continuing care of a health care provider, or that the extent of her illness rendered her unable to perform daily activities. *See generally id.* at 210-

24

16.  Further, there is no evidence to suggest that the plaintiff attempted to follow the defendant's formal procedures for requesting FMLA leave.  *See generally* Pl.'s Opp'n.  Accordingly, based on the evidence in the record, no reasonable juror could infer that the plaintiff provided "sufficient information for [his] employer to reasonably determine whether the FMLA may apply to [his] leave request," 29 C.F.R. § 825.303, and the court grants summary judgment to the defendant on this claim.[13]

### 2.  The Court Grants the Defendant's Motion for Summary Judgment on the Plaintiff's FMLA Retaliation Claim

The defendant argues that the plaintiff fails to establish his prima facie case of FMLA retaliation because he has not shown that he engaged in any FMLA protected activity.  Def.'s Mot. at 43.  Specifically, the defendant contends that the plaintiff could not have been discharged in retaliation for engaging in protected activity because he never instituted any proceedings or opposed any practice related to the FMLA against the defendant prior to his termination.  Def.'s Mot. at 43.  Moreover, the defendant maintains that even assuming that the plaintiff was able to demonstrate a prima facie case for retaliation, he still fails to rebut the legitimate reason offered by the defendant for his termination.  *Id.* at 43.  Namely, the defendant asserts that it terminated the plaintiff due to his lack of communication with the defendant in the weeks following his mother's funeral.  *Id.* at 43.

---

[13]     To the extent that the plaintiff argues that the defendant interfered with his rights to use FMLA leave after the death of his mother, *see* Pl.'s Statement at 3, the court determines that this argument also lacks merit.  The FMLA does not cover bereavement leave, and thus the defendant could not have violated the statute in denying the plaintiff time off after his mother's funeral. *Lange v. Showbiz Pizza Time, Inc.*, 12 F. Supp. 2d 1150 (D. Kan. 1998) (denying the plaintiff's FMLA claim based on his request for bereavement leave because such leave was not protected under the FMLA); *Beal v. Rubbermaid Commercial Prods. Inc.*, 972 F. Supp. 1216, 1229 (S.D. Iowa 1997) (concluding that an employer was not required under the FMLA to give its employee leave after her son's death because FMLA leave was not meant to be used for bereavement).

In response, the plaintiff argues that he has provided deposition testimony supporting that his manager had told him, following the death of his mother, to take as much time off as he needed, and yet, when he returned to work, the defendant refused to reinstate the plaintiff to his former position. Pl.'s Statement at 10-11. Additionally, the plaintiff asserts that he has presented evidence from which a jury could reasonably conclude that the defendant's articulated legitimate nondiscriminatory reason for his termination was pretext for retaliation. Pl.'s Opp'n at 14. This evidence includes the plaintiff's own assertion that "other employees were given up to six months off after a death[,]" Pl.'s Aff. at ¶ 4, and that Vines's had told the plaintiff after his termination that he could be brought back under the FMLA," Pl.'s Statement at ¶ 9.

The FMLA makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the FMLA]."[14] 29 U.S.C. § 2615(a)(2); *see also* 29 C.F.R. § 825.220(e) ("Individuals . . . are protected from retaliation for opposing (e.g., filing a complaint about) any practice which is unlawful under the [FMLA]."). Claims of retaliation under the FMLA are analyzed under the familiar *McDonnell Douglas* burden-shifting framework. *Roseboro v. Billington*, 606 F. Supp. 2d 104, 109 (D.D.C. 2009) (determining that when "analyz[ing] [FMLA] retaliation claims, courts apply the burden-shifting framework adopted in *McDonnell Douglas*"). Accordingly, in order to establish a prima

---

[14]     The FMLA's retaliation provision, 29 U.S.C. § 2615(a)(2), is analogous to the sort of "retaliation" claim that is familiar under Title VII, in which an employee alleges that the employer discriminated against the employee for opposing what the employee reasonably believed to be violations of Title VII by the employer. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) ("Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids"); *see also* 60 Fed. Reg. 2180, 2218 (Jan. 6, 1995) ("[The FMLA] makes it unlawful for an employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the Act. This opposition clause is derived from Title VII of the Civil Rights Act of 1964 and is intended, according to the legislative history, to be construed in the same manner.").

facie case of retaliation under the FMLA, a plaintiff must show, *inter alia*, that he engaged in a statutorily protected activity. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones v. Bernanke*, 557 F.3d 670, 677 (D.C. Cir. 2009).

If the employer successfully presents a legitimate, non-retaliatory reason for its actions, "the presumption raised by the prima facie is rebutted and drops from the case." *Hicks*, 509 U.S. at 507 (internal citation omitted); *Brady*, 520 F.3d at 494 (noting that "the prima facie case is a largely unnecessary sideshow"). Upon such a showing by the defendant, the district court need resolve only one question: "Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-[retaliatory] reason was not the actual reason and that the employer intentionally [retaliated] against the employee . . . ?" *Brady*, 520 F.3d at 494. In other words, did the plaintiff "show both that the reason was false, and that . . . retaliation was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007) (internal quotations and citation omitted).

Here, the plaintiff appears to argue that because he took leave after the death of his mother, and was subsequently terminated, he has provided sufficient evidence that he "engaged in statutorily protected activity." *See* Pl.'s Opp'n at 14. Importantly, however, the plaintiff never alleges that he was terminated for "opposing" a practice made unlawful under the FMLA. *See* Pl.'s Opp'n at 12-16. Nor is there any indication in the record that the plaintiff objected to the defendant's FMLA policies or practices during his entire five year tenure with the defendant. *See generally* Pl.'s Opp'n; Pl.'s Dep. As noted, the FMLA's retaliation provision only makes it unlawful for an employer to discharge or discriminate against an individual for "opposing any practice made unlawful" under the statute. 29 U.S.C. § 2615(a)(2). Accordingly, given that the plaintiff has not alleged that he "opposed" some practice made unlawful under the FMLA, he

could not have engaged in any statutorily protected activity for purposes of his retaliation claim. *See Price v. Wash. Hosp. Ctr.*, 321 F. Supp. 2d. 38, 46 (D.D.C. 2004) (noting that the FMLA's retaliation provision applies to a discharge "for opposing any practice made unlawful by this subchapter" and that alleging unlawful termination, without more, is insufficient to raise an FMLA retaliation claim); *see also Phillips v. Mathews*, 547 F.3d 905, 914 (8th Cir. 2008) (asserting that, when correctly interpreted, the FMLA's retaliation provision requires an "alleged opposition to a practice made unlawful by the FMLA").

Finally, even assuming that the plaintiff has stated a prima facie case, he has failed to provide sufficient evidence from which a reasonable juror could determine that the defendant's legitimate non-discriminatory reason for terminating the plaintiff was pretext. *See Roseboro*, 606 F. Supp. 2d at 109 (noting that if the employer successfully produces evidence of a legitimate, non-discriminatory reason for its action, the burden "shifts back to the employee to produce evidence that the legitimate reason was pretextual, *i.e.* that it was false and the real reason for the adverse action was retaliation."). The defendant maintains it discharged the plaintiff due to the plaintiff's failure to communicate with the defendant following the death of his mother and explain if and when he would return to work. Def.'s Mot. at 43; *see also* Vines's Dep. at 72-73, 82-83 (explaining that the plaintiff had been removed from the payroll after three weeks of being absent from work without communication).

In response, the plaintiff only states that "an employee named Tyra" was given up to six months of leave after a family member's death. Pl.'s Aff. at ¶ 4. Notably, the plaintiff does not explain the circumstances surrounding Tyra's leave, such as the amount and extent of information that she provided to the defendant regarding her reason for missing work or the extent of communication with the defendant leading up to and during her absence. Such vague

evidence is insufficient for a reasonable juror to infer that the plaintiff's FMLA activity was the "real reason for the termination." *See Weber*, 494 F.3d at 186. Accordingly, the court grants the defendant's motion for summary judgment with respect to the defendant's FMLA claims.

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment.[15] An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 13th day of July, 2011.

RICARDO M. URBINA
United States District Judge

---

[15] The court does not grant the defendant's motion for summary judgment lightly, as the alleged actions would be grossly offensive to the court if proven true. At this stage, however, the court's role is limited to determine whether there is more than the "mere existence of a scintilla of evidence" in support of the plaintiff's claims. *Celotex*, 277 U.S. at 322. Because the defendant has shown that the plaintiff "fail[ed] to make a showing sufficient to establish the existence of an element essential to [the plaintiff's] case," summary judgment is appropriate. *Anderson*, 477 U.S. 252.